# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

ADM Edible Bean Specialties, Inc.,                    Case No. 23-CV-1096 (JMB/LIB)

        Plaintiff,

        v.                                                        **ORDER**

American Bean LLC,

        Defendant.

---

Andrea Savageau, Elizabeth Joan Slama Johnson, Lauren J.F. Barta, Mark Joseph Winebrenner, Shane A. Anderson, Faegre Drinker Biddle & Reath LLP, Minneapolis, MN, for Plaintiff ADM Edible Bean Specialties, Inc.

Gary R. Leistico, Jayne Esch, Leistico & Esch PLLC, Clear Lake, MN, for Defendant American Bean LLC.

---

This matter is before the Court on Plaintiff ADM Edible Bean Specialties, Inc.'s (ADM) and Defendant American Bean LLC's (American Bean) request for construction of disputed claim terms pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). (Doc. No. 47.) In this action, ADM alleges that American Bean infringed certain patents protecting its invention of specific edible bean seed varieties. The parties dispute the meaning of "plurality" and the meaning of the respective names for the bean seed varieties in question. As discussed below, the Court adopts ADM's proposed construction of the term "plurality" and declines to construe the name terms.

## BACKGROUND

ADM produces and sells patented edible bean seeds, including several varieties of pinto beans. American Bean sells dry edible bean seeds to growers, who harvest and sell the harvested beans back to American Bean, which then resells the beans for consumption. American Bean sources at least some of its dry edible pinto bean seeds from ADM, which has patents that cover each of the specific lines of pinto beans at issue here. (*See, e.g.*, Doc. No. 44 ¶¶ 10, 13, 16, 19, 22; Doc. Nos. 44-1–44-5.)

In April 2023, ADM filed suit against American Bean, asserting numerous claims, including for patent infringement. (Doc. No. 1.) ADM alleges that, beginning in 2019 and continuing through today, American Bean has been propagating, stocking, selling, saving, supplying, shipping, dispensing, conditioning, and delivering ADM's patented pinto bean seed varieties without authority to do so. (Doc. No. 44 ¶ 51.) ADM also alleges that American Bean used its facilities and created new facilities to treat ADM beans and to resell them to growers for replanting. (*Id.* ¶¶ 52–64.)

ADM asserts five patents relating to edible pinto bean varieties: U.S. Patent No. 9,775,312 covering its "Radiant" pinto bean variety; U.S. Patent No. 9,532,523 covering its "Vibrant" pinto bean variety; U.S. Patent No. 11,000,005 covering its "Cowboy" pinto bean variety; U.S. Patent No. 11,771,047 covering its "Gleam" pinto bean variety; and U.S. Patent No. 11,778,975 covering its "Lumen" pinto bean variety. (Doc. No. 44 ¶¶ 10, 13, 16, 19, 22; *see also* Doc. No. 44-1; Doc. No. 44-2; Doc. No. 44-3; Doc. No. 44-4; Doc. No. 44-5.) ADM alleges that American Bean infringes claims 1, 2, 4, 10, 11, and 12 of its

five pinto bean variety patents.  (Doc. No. 44 ¶¶ 66, 73, 83, 90, 100, 107, 117, 124, 134, 141.)  Those claims are functionally identical in each patent,[1] and appear as follows:

Claim 1:    An edible bean seed designated as [Name], a sample of the edible bean seed deposited under accession no. PI [Number].

Claim 2:    A plant produced by growing the edible bean seed of claim 1.

Claim 4:    An edible bean plant having all of the physiological and morphological characteristics of the edible bean plant of claim 2.

Claim 10:   A plurality of the edible bean seeds of claim 1.

Claim 11:   A method of planting a field, comprising planting the plurality of the edible bean seeds of claim 10 in the field.

Claim 12:   A process for producing edible beans for consumption, comprising processing the plurality of the edible bean seeds of claim 10 such that the plurality of the edible bean seeds are suitable for consumption.

(*See* Doc. No. 44 ¶¶ 73–80; *see also* Doc. No. 44-1 at 6; Doc. No. 44-2 at 6; Doc. No. 44-3 at 6; Doc. No. 44-4 at 6; Doc. No. 44-5 at 6.)

In January 2024, the parties filed a joint claim construction statement, in which they noted a disagreement on the construction of the term "plurality."  (Doc. No. 42.)  ADM argues that the word "plurality" is defined as "two or more."  (Doc. No. 42-1 at A-1.)  For its part, American Bean proposed that "plurality" means "an essentially homogenous

---

[1] The parties agree that claims of the patents are essentially the same for purposes of the Court's claim construction analysis.  (*See* Doc. No. 51 at 16; Doc. No. 63 at 32.)

population of the edible pinto bean seed that is essentially free from other seed and comprises at least 95% or more of the bean seed." (*Id.*)

In addition, the parties disputed the construction of the names for each pinto bean line (i.e., the terms "Cowboy," "Vibrant," "Radiant," "Lumen," and "Gleam"). (*Id.* at A-3– A-12.) ADM believes that each name term is sufficiently defined by the patents and that, therefore, no construction is necessary. (*See id.*) American Bean initially proposed the following constructions for each of the name terms:

> Cowboy:    A hybrid edible pinto bean seed resulting from a cross between pinto variety 'La Paz' as the male parent and the pinto variety 'Sinaloa' as the female parent. Cowboy includes asexually produced progeny, by means of grafting, budding or other similar processes that produces an offspring with an identical genetic combination to the single parent plant (i.e., a clone). Cowboy does not mean pinto beans sexually produced by Cowboy plants (i.e., the crop or progeny of the plant by means of natural, sexual reproduction).

> Vibrant:    A hybrid edible pinto bean seed resulting from a cross between Pro Vita's slow darkening pinto breeding line 'SDP 1533' as the female parent and the Ameriseed variety 'Sinaloa' as the male parent. Vibrant includes asexually produced progeny, by means of grafting, budding or other similar processes that produces an offspring with an identical genetic combination to the single parent plant (i.e., a clone). Vibrant does not mean pinto beans sexually produced by Vibrant plants (i.e., the crop or progeny of the plant by means of natural, sexual reproduction).

> Sinaloa:    A hybrid edible pinto bean seed resulting from a cross between slow darkening pinto breeding line 'SDP 1533' as the female parent and the variety 'Sinaloa' as the male parent. Radiant includes asexually produced progeny, by means of grafting, budding or other similar processes that produces an offspring with an identical genetic

combination to the single parent plant (i.e., a clone).
Radiant does not mean pinto beans sexually produced by
Radiant plants (i.e., the crop or progeny of the plant by
means of natural, sexual reproduction).

Lumen:     A hybrid edible pinto bean seed resulting from a cross
between pinto variety 'Sinaloa' as the male parent and
the ProVita pinto variety '07-5213' as the female parent.
Lumen includes asexually produced progeny, by means
of grafting, budding or other similar processes that
produces an offspring with an identical genetic
combination to the single parent plant (i.e., a clone).
Lumen does not mean pinto beans sexually produced by
Lumen plants (i.e., the crop or progeny of the plant by
means of natural, sexual reproduction).

Gleam:     A hybrid edible pinto bean seed resulting from a cross
between pinto variety 'Sinaloa' as the male parent and
the ProVita pinto variety '07-5213' as the female parent.
Gleam includes asexually produced progeny, by means
of grafting, budding or other similar processes that
produces an offspring with an identical genetic
combination to the single parent plant (i.e., a clone).
Gleam does not mean pinto beans sexually produced by
Gleam plants (i.e., the crop or progeny of the plant by
means of natural, sexual reproduction).

(*Id.*)

Then, after receiving ADM's claim construction brief, American Bean conceded

that its proposed constructions for the name terms were "incorrect"; it then proposed the

following new, single construction:

The designated name and number of each patented pinto bean
seed—[Radiant, Vibrant, Cowboy, Gleam] or [Lumen]—
means an inbred edible pinto bean seed resulting from an initial
cross between one pinto variety as the male parent and another
pinto variety as the female parent and multiple generational
selections described in the Origin and Breeding History of each
patent to ultimately produce a uniform, stable variety
substantially free of any variants.  A sample of said bean seed

is deposited with the National Center for Genetic Resources Preservation under an accession number listed on each patent. Said patented edible pinto bean includes seeds and plants that are phenotypically, morphologically, and genetically the same as the sample deposited under said accession number.

(Doc. No. 56 at 3–5.)

## DISCUSSION

The parties now ask the Court to construe the terms "plurality" and the name terms of each of the pinto bean lines. The Court first construes the term "plurality" to mean "two or more." The Court also concludes that the names of the bean varieties at issue do not require construction.

"[T]he interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law exclusively for the court." *Markman*, 52 F.3d at 970–71. "[T]he trial court must determine the meaning of any disputed words from the perspective of one of ordinary skill in the pertinent art at the time of filing." *Chamberlain Grp., Inc. v. Lear Corp.*, 516 F.3d 1331, 1335 (Fed. Cir. 2008). Courts "presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003.) Further, "the words of a claim are generally given their ordinary and customary meaning," which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as

of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (quotation omitted).[2]

The analysis of any disputed claim term begins with the intrinsic evidence, which includes "the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The claims "are part of a fully integrated written instrument, consisting principally of a specification that concludes with the claims." *Phillips*, 415 F.3d at 1315 (quotation and internal citation omitted). The claims are therefore "read in view of the specification." *Markman*, 52 F.3d at 979.

Although the Court may, in its discretion, consider extrinsic evidence as an aid to determine proper claim construction, it is improper to do so if intrinsic evidence alone resolves any ambiguity in the disputed term. *See Vitronics*, 90 F.3d at 1583. Courts may, however, use a dictionary or technical treatise to "assist in understanding the commonly understood meaning" of a term, so long as these sources do not contradict the definition that is found in the relevant patent documents. *Phillips*, 415 F.3d at 1322–23. Finally, courts are not obligated to construe every disputed term. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

## I. "PLURALITY"

The parties dispute the meaning of the term "plurality" as it is used in Claim 10, which claims "[a] plurality of the edible bean seeds of claim 1." (*See* Doc. No. 44-1 at 6.)

---

[2] Although there are exceptions to this general rule, *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012), neither party argues that any exception applies.

American Bean asserts that "plurality" means "an essentially homogenous population of the edible pinto bean seed that is essentially free from other seed and comprises at least 95% or more of the bean seed." (Doc. No. 49 at 4.) ADM disagrees and asserts that "plurality" should be given its plain and ordinary meaning of "two or more." (Doc. No. 51 at 34.) For the following four reasons, the Court agrees with ADM: "[a] plurality of the edible bean seeds of claim 1" means "two or more edible bean seeds of claim 1."

First, courts in the Federal Circuit have consistently concluded, as has ADM, that the plain and ordinary meaning of "plurality" in a patent is "two or more." *See, e.g.*, *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1377 (Fed. Cir. 2021) ("'[A] plurality of' requires two or more."); *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1348 (Fed. Cir. 2013) ("The district court correctly assessed that a plurality simply means two or more."); *August Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1286 (Fed. Cir. 2011) ("A plurality of wafers means more than one physically distinct wafer."); *ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1382 (Fed. Cir. 2003) (concluding that "each of a plurality of fields" means "each of at least two fields"); *Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1328 (Fed. Cir. 2001) ("[P]lurality, when used in a claim, refers to two or more items, absent some indication to the contrary."); *York Prods., Inc. v. Cent. Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1575 (Fed. Cir. 1996) (concluding that plurality means "at least two"); *Wanker v. United States*, 152 Fed. Cl. 219, 251 (2021) ("[T]he Court construes 'plurality' to have its plain and ordinary meaning of 'two or more.'"). American Bean does not provide the Court with any caselaw that would require a different result here.

8

Second, dictionary definitions of "plurality" (except for definitions related to the term's use in the context of voting), as provided to the Court by ADM, also indicate that the term refers to more than one, or the state of being plural. (*See* Doc. No. 53-10 (excerpted pages from a dictionary defining "plurality" as "the state or fact of being plural," and defining "plural" as "numbering more than one"); Doc. No. 53-11 (excerpted pages from a dictionary defining "plurality" as "the state or fact of being plural" and defining "plural" as "relating to or composed of more than one member, set, or kind"); Doc. No. 53-12 (excerpted pages from a dictionary defining "plurality" as "the state of being plural or numerous" and defining "plural" as "containing, involving, or composed of more than one person, thing, item, etc."); Doc. No. 53-13 (excerpted pages from a dictionary defining "plurality" as "the state of being plural" and defining "plural" as "of, relating to, or constituting a word form used to denote more than one").) American Bean does not dispute these definitions or "provide an alternative dictionary definition that supports its proposed construction. (*See* Doc. No. 56.)

Third, the following patent language on which American Bean relies to support its proposed construction is unavailing:

> In another embodiment, seed of the edible bean line designated as [name] is disclosed. Such seed may be an essentially homogeneous population of the edible bean line designated as [name], wherein such seed of the edible bean line designated as [name] is essentially free of other seed. Accordingly, the seed of the present invention comprises at least 95% or more of the seed of the edible bean line designated as [name].

(Doc. No. 49 at 5; *see also* Doc. No. 44-1 at 4; Doc. No. 44-2 at 4; Doc. No. 44-3 at 4; Doc. No. 44-4 at 4; Doc. No. 44-5 at 4.) This language does not use the term "plurality" or

otherwise purport to define that term.  Instead, it comes from a particular embodiment envisioning a "population of the edible bean line."  The reference to "95% or more" describes the degree of the population's homogeneity, and, contrary to American Bean's characterization, there is no indication that "95% or more" relates to the term "plurality" or even that it relates to claim 10.  Moreover, American Bean's urged language also includes the permissive "may," which precludes the Court from construing this language as American Bean suggests.  *Cf. X2Y Attenuators, LLC v. Int'l Trade Comm'n*, 757 F.3d 1358, 1362 (Fed. Cir. 2014) (concluding permissive language "may" is not mandatory unless other language makes it "clear[ly] and unmistakabl[y]" so).

Fourth and finally, American Bean's proposed construction would improperly import one limitation from an embodiment into claim 10.  *See JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005) (concluding that limitations from one embodiment cannot limit patent claims absent express intent "for the claims and the embodiments in the specification to be strictly coextensive" (quotation omitted)).  The patents each expressly state that the embodiments are not coextensive with the claims but instead provide that "the invention is not limited by the description of the exemplary embodiment, but rather by the appended claims as originally filed."  (Doc. Nos. 44-1 at 6; Doc. No. 44-2 at 6; Doc. No. 44-3 at 6; Doc. No. 44-4 at 6; Doc. No. 44-5 at 6.)

Therefore, the Court declines American Bean's proposed construction of "plurality" and instead gives it its plain and ordinary meaning of "two or more."

## II.      NAMES OF THE PINTO BEAN VARIETIES

American Bean argues that the name terms "Cowboy," "Vibrant," "Radiant," "Lumen," and "Gleam" require construction.  (Doc. No. 49 at 9.)  ADM asserts that these terms need no construction "because their plain and ordinary meanings are sufficiently clear in the context of the Asserted Claims."  (Doc. No. 51 at 22.)  The Court again agrees with ADM.

### A.      Timeliness of American Bean's Second Proposed Construction

As an initial matter, the Court determines that because American Bean has not shown good cause, American Bean's initial construction is before the Court, not the second proposed construction.

An August 2023 pretrial scheduling order made clear that the parties' proposed constructions were due on November 30, 2023, and that, after that time, the parties could amend their proposed constructions "only by leave of Court for good cause shown."  (Doc. No. 32 at 6.)  In keeping with that deadline, American Bean proposed its initial construction of the name terms in its affirmative claim construction brief and in the parties' joint claim construction statement.  (Doc. No. 49; *see also* Doc. No. 42-1.)  However, in April 2024, in its response to ADM's claim construction brief, American Bean stated that it "now understands its initial proposed construction of the terms 'Cowboy,' 'Vibrant,' 'Radiant,' 'Lumen,' and 'Gleam' to be incorrect" and proposed a new construction of those terms. (Doc. No. 56 at 2–3.)  Before seeking to change its proposed construction, American Bean did not explicitly request leave of Court.  Nevertheless, the Court construes American

Bean's newly asserted construction in its responsive claim construction Brief as a request for leave to amend its initial claim construction of the name terms.

"The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (declining to consider a new construction because a diligent party "would have performed this research at the outset of the litigation, and at least prior to the scheduled deadline"); Fed. R. Civ. P. 16(b)(4); *see also Bristol-Myers Squibb Co. v. Dr. Reddy's Lab*, No. CV1918686MASTJB, 2021 WL 1820486 (D.N.J. May 6, 2021) ("To allow a new claim construction presented for the first time in a responsive brief without a demonstration of good cause would violate both the letter and the spirit of the Local Patent Rules.").

Here, American Bean asserts that it did not realize that the patents applied to sexual reproductions of the patented varieties until after reviewing a declaration filed in support of ADM's affirmative claim construction brief.  This explanation, however, does not establish good cause because the language of the patents and the PVPA certificates attached to the initial complaint contemplate sexual reproduction of the patented pinto bean varieties at issue.  (*See* Doc. Nos. 1-7–1-9, 44-1–44-5.)  Had American Bean acted diligently, it would have known that the language of the patents at issue contemplated sexual reproduction prior to reviewing the declaration.  Thus, the Court concludes that American Bean has not demonstrated good cause to amend its proposed construction of the name terms, and therefore it will not consider the second proposed construction.

## B.      Consideration of American Bean's Initial Proposed Construction

American Bean asserts that the name terms are not sufficiently clear and require construction.  The Court disagrees.

Claim construction is "a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement," and "not an obligatory exercise in redundancy."  *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1544, 1568 (Fed. Cir. 1997). A term that is clear and readily comprehensible in its original form may need no further elucidation.  *See Ecolab USA Inc. v. Diversey, Inc.*, No. 12-CV-1984 (SRN/JJG), 2014 WL 258570, at *14 (D. Minn. Jan. 23, 2014) (declining to construe term that was "already understandable"); *see also Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (holding that claims at issue did "not require elaborate interpretation").

The Court first declines to adopt a construction that the proponent has conceded is "incorrect."  (*See* Doc. No. 56 at 2.)  In addition, and more substantively, the Court declines to construe terms that do not relate to any technical claim language essential to assist a trier of fact in understanding the scope of the claims.  Instead, both parties acknowledge that the terms "Cowboy," "Radiant," "Vibrant," "Lumen," and "Gleam" are merely nomenclature; they are designations or labels that "will be used to refer" to the particular patented edible bean variety.  (Doc. Nos. 44-1 at 4; Doc. No. 44-2 at 4; Doc. No. 44-3 at 4; Doc. No. 44-4 at 4; Doc. No. 44-5 at 4.)  In fact, American Bean concedes that it "does not dispute that these name terms are simply the variety names for the patented edible bean lines as ADM points out in its [affirmative claim construction] brief."  (Doc. No. 56 at 3

13

(quotation omitted).)   As such, American Bean does not explain how the unique labels, which are used only to refer to particular patented pinto bean lines and distinguish one patented line from another, could ever require construction.  The language of the patents makes clear, even to a lay person, that the terms "Cowboy," "Radiant," "Vibrant," "Lumen," and "Gleam" are merely the names of the patented pinto bean varieties.[3]  Thus, the Court need not construe the name terms "Cowboy," "Radiant," "Vibrant," "Lumen," and "Gleam."

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT ADM's request for claim construction (Doc. No. 47) is GRANTED as follows:

1.  The term "[a] plurality of the edible bean seeds of claim 1" in claim 10 means "two or more edible bean seeds of claim 1;" and

2.  The name terms "Cowboy," "Radiant," "Vibrant," "Lumen," and "Gleam" require no construction.

Dated:  September 20, 2024                    /s/ Jeffrey M. Bryan
                                              Judge Jeffrey M. Bryan
                                              United States District Court

---

[3] Furthermore, American Bean's proposed construction would, in effect, add its preferred summary of each invention as the meaning for the respective label, rendering the actual patent language—especially the language in Claims 1, 2, and 4—superfluous.  *See Exxon Chem. Pats., Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1557 (Fed. Cir. 1995) (observing that court "must give meaning to all the words in [the] claims.").